IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:15-CR-39-LO |
| ) | |
| MICHAEL ANTHONY RANDALL, ) | Honorable Liam O'Grady |
| a.k.a. "Divine tha Victorious Mack," ) | |
| ) | Sentencing: October 23, 2015 |
| Defendant. ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States agrees that the PSR correctly determined that the Sentencing Guidelines recommend a sentence of 360 months of imprisonment to life imprisonment. The United States recommends a sentence of **500 months of imprisonment** followed by 20 years of supervised release. The United States also asks that this Court order the defendant not to contact any of the victims noted in the Statement of Facts and PSR, both while he is imprisoned and while on supervised release. Finally, the United States also asks that this Court impose the mandatory condition that the defendant register as a sex offender.[1]

**I.    Background**

Between 2010 and 2014, Randall was a pimp and derived most of his income from prostituting women and girls. Randall fully embraced sex trafficking as his vocation. Randall was a "gorilla pimp," that is, a pimp who uses force and violence to control the victims. He sex trafficked at least one underage girl (from Kosovo), whose initials are "TH," who was 17 years old

---

[1] 18 U.S.C. § 3583(d) states: "The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act."

at the time. HSI Report of Investigation ("ROI") 96. TH was a runaway, and Randall knew this. ROI 96, at 1. Randall recruited TH after he saw an advertisement that had been posted by TH's pimp on www.backpage.com. *Id.* Randall successfully convinced TH to travel from Buffalo, New York, to Virginia, and he then began sex trafficking her. *Id.*, at 4.

Randall required TH to give him all of the prostitution proceeds. ROI 96, at 5. To keep her compliant and numbed, Randall provided TH with marijuana. *Id.* at 4. When that did not work, Randall was happy to use violence. For example, TH once hid some of the money with the intent of keeping it for herself. ROI 96, at 5. Randall said that this constituted "stealing" his money, and he threw TH against a counter. *Id.* He then grabbed her by the hair and her nose struck something and began bleeding. *Id.* Randall then attempted to have sex with TH in front of another woman who was being prostituted. *Id.*, at 5-6. To prevent her from running away, Randall took TH to Pittsburgh, Pennsylvania, to prostitute her there. *Id.*, at 6. Fortunately TH was encountered by the police and never returned to Randall.

Randall was particularly violent and controlling with the women he sex trafficked. For example, while he was prostituting a woman whose initials are "TS," Randall refused to let TS leave him. ROI 49, at 4. TS related that she believed she was not free to leave Randall and that she had to prostitute and give all of the proceeds to Randall. ROI 49, at 4, 5. Randall did not allow her to keep any of the prostitution money. ROI 49, at 5. When walking the streets, Randall constantly watched her and prevented her from fleeing. ROI 49, at 4. Randall also had TS tattooed with the words "Divine's Angel."[2]

---

[2] Sex traffickers sometimes brand victims as a means of exercising ownership over them and to communicate to the victims (and competing pimps) that the victims are the property of the pimp. *See Shanklin v. Dexter*, 2010 WL 4137514, at *1 (C.D. Cal. July 20, 2010).

Randall initially prostituted TS in Houston. Because TS is from Texas, to inhibit her from escaping, Randall transported TS to Charlottesville, Virginia, and prostituted her there. ROI 49 at 7. Randall joined forces with his half-brother, Michael Lawrence Maynes, Jr., and became a part of Horse Block Pimpin. Once in Charlottesville, Randall regularly beat TS. ROI 49, at 7. Randall choked TS on various occasions, threw her into walls, and tried to throw her down a flight of stairs. ROI 49, at 7. TS begged Randall to let her leave, but Randall refused, because TS was making so much money for him. ROI 49, at 7. TS repeatedly told Randall that she felt disgusting and did not want to be prostituted, but Randall ignored TS or told her that she needed to make more money. ROI 49, at 7.

Randall also regularly raped TS. ROI 49, at 8. TS repeatedly told Randall that she did not want to have sex with him, but he responded that, as her pimp, it was his right to have sex with her whenever he desired. ROI 49, at 8. Randall repeatedly reminded TS that she was "his bitch." ROI 49, at 7. Unfortunately, TH and TS are only two of many women whom Randall and his co-conspirators prostituted and exploited.

## II. A Sentence of 500 Months of Imprisonment is Appropriate

A sentence of 500 months of imprisonment is the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

Randall's sentence should reflect the seriousness of his sex trafficking and the harm that he inflicted on the many victims. The combination of the eight aggravating factors discussed below calls for the imposition of a sentence of 500 months of imprisonment.

### 1. The Use of Violence and Beatings of Victims

Randall's repeated use of violence to sex traffick women and girls suggests that a substantial sentence is warranted. He repeatedly showed no hesitation in employing force to coerce victims to follow his orders and to punish any infractions. Importantly, Randall's violence was directed toward women and girls who were weaker and smaller than him.

The United States has a particular duty to ensure that society is protected from Randall's ferocity. Randall's viciousness and his indifference to the pain he inflicted on his victims demonstrates his unfitness to remain in society. This penchant for violence unequivocally establishes the need for a lengthy prison term. Furthermore, Randall has shown that he is an abuser of narcotics and unlawful substances, which are likely to exacerbate his temper and compound any violence he chooses to perpetrate in the future. PSR ¶ 66. Thus, the defendant poses a substantial threat to society, and a strong sentence is the best way to neutralize that threat.

### 2. Exploitation of a Vulnerable Minor

Another factor militating in favor of a sentence of 40 years is the fact that at least one of Randall's victims was a 17-year-old girl (TH), when Randall sold her to customers. TH was unusually vulnerable due to her youth and the fact that she was a runaway. Randall knew this and took advantage of this vulnerability.

For a number of reasons, federal law punishes crimes against minors more severely than crimes against adults. Teenagers are more vulnerable than adults; they are more easily manipulated and coerced because they lack the intelligence and judgment of adults; teenagers are more easily frightened and are less likely to report crimes; and crimes against teenagers are more likely to have a lasting and damaging impact on the victim's young minds and bodies. *See Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455, 2464 (2012) (noting that teenagers are "are

more vulnerable . . . to negative influences and outside pressures, have limited control "over their own environment," and often lack the ability to extricate themselves from horrific settings); *United States v. Hughes*, 632 F.3d 956, 962 (6th Cir. 2011) (noting the special vulnerabilities of children). Enriching himself, as Randall did, at the expense of a vulnerable teenage girl is a heinous crime with far-reaching and permanent consequences for the victims. Accordingly, Randall's prostitution of TH alone warrants a sentence of 500 months of incarceration.

This Court should also remember that, beyond the exploitation of some of society's most vulnerable victims, sexual crimes involving minors inherently pose a substantial risk of physical force being used (not to mention serious injury resulting from that use of force). *United States v. Vann*, 660 F.3d 771, 772 (4th Cir. 2011) (en banc); *Chery v. Ashcroft*, 347 F.3d 404, 408–09 (2d Cir. 2003). Defendants like Randall who commit such crimes show their disregard for society's laws, their reckless disregard for the welfare of minors, and the probability that violence will be used to keep such minors "in line." Indeed, Randall himself resorted to violence with TH when he found her retaining money that she herself had earned.

Beyond the vulnerabilities engendered by TH's youth, Randall specifically selected TH because of still other vulnerabilities. This exploitation is not fully reflected in Randall's offense level, but this Court should take this into consideration when sentencing Randall. For example, Randall knew and exploited the fact that TH was a runaway. He knew that TH was an impressionable, teenage girl who could be lured with promises of a glamourous lifestyle, romance, and money.[3] Randall capitalized on the fact that TH was bereft of parental guidance. *United*

---

[3] This is a technique commonly employed by sex traffickers. *See United States v. Pipkins*, 378 F.3d 1281, 1285 (11th Cir. 2004) ("To persuade underage females to prostitute for them, the Defendants (and other pimps charged in the indictment) presented a vision of ostentatious living, promising fame and fortune."), *vacated on Booker grounds,* 544 U.S. 902

5

*States v. Irving*, 554 F.3d 64, 75 (2d Cir. 2009) ("children who were homeless and were without parental or other appropriate guidance made them unusually vulnerable, independently of their ages"). All of these things made TH more vulnerable and more likely to be entrapped by Randall's empty promises.

### 3. Sexual Assaults of TS

Randall also warrants 500 months of imprisonment because of the multiple times he raped TS. As mentioned above, Randall regularly raped TS. ROI 49, at 8. TS repeatedly told Randall that she did not want to have sex with him, but he responded that, as her pimp, it was his right to have sex with her whenever he desired. ROI 49, at 8.[4] Rape and sexual assault causes extreme and long-lasting trauma to victims. *Hill v. Cundiff*, 797 F.3d 948, 984 (11th Cir. 2015) ("It is hard to imagine what could cause emotional distress more severe than the psychological trauma of rape . . . ."). As Chief Justice Warren Burger wrote:

> [Rape] not only violates a victim's privacy and personal integrity, but inevitably causes serious psychological as well as physical harm in the process. The long range effect upon the victim's life and health is likely to be irreparable; it is impossible to measure the harm which results. Volumes have been written by victims, physicians, and psychiatric specialists on the lasting injury suffered by rape victims. Rape is not a mere physical attack it is destructive of the human personality.

*Coker v. Georgia*, 433 U.S. 584, 611-12 (Burger, C.J., dissenting). TS is now forced to live with the memories of what Randall repeatedly did to her. His abhorrent conduct and the trauma it engendered also require an enhanced sentence.

---

(2005), *opinion reinstated*, 412 F.3d 1251 (11th Cir.), *cert. denied*, 546 U.S. 994 (2005).

[4] Under the depraved "rules" of pimping, a victim is obliged to have sexual intercourse with her pimp whenever her pimp desires. *Pipkins*, 378 F.3d at 1285 ("At the whim of her pimp, a prostitute is obligated to have sexual intercourse with him, another pimp, or even another prostitute.").

### 4. Defendant's Leadership Role

Randall had a leadership role in the Horse Block Pimpin sex trafficking organization. He was one of its three primary pimps. Although he was junior to Michael Lawrence, he exercised important supervisory functions that resulted in the victimization of a greater number of women. Defendants who exercise leadership roles in criminal activities are more culpable for the harm that their ventures have inflicted on victims and society. *United States v. Cali*, 87 F.3d 571, 576 (1st Cir. 1996); *United States v. Tejada-Beltran*, 50 F.3d 105, 111 (1st Cir. 1995) (noting the importance of increasing the punishment of those who exercised more responsibility for the operation of a criminal enterprise); *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir. 1989). Accordingly, Randall's leadership role in the venture is one of the many factors that calls for this Court to impose a sentence of 500 months of imprisonment.

### 5. Protracted Duration of the Criminal Conduct

The extensive duration of Randall's criminal conduct also suggests that a sentence of 500 months of incarceration is appropriate. *United States v. Garner*, 489 F. App'x 721, 722 (4th Cir. 2012) (noting that the extended duration of criminal conduct warrants increased punishment); *United States v. Sutton*, 431 F. App'x 486, 487 (7th Cir. 2011) (same). The defendant was a professional sex trafficker for multiple years. For this reason, too, he deserves a strong sentence.

### 6. A Pattern of Exploiting Multiple Victims

Randall also warrants a hefty sentence because of his pattern of exploiting multiple victims. *Rohit v. Holder*, 670 F.3d 1085, 1090 (9th Cir. 2012) ("Prostitution . . . always involves sexual exploitation."). The exploitation of multiple victims necessarily caused greater harm than merely committing a single crime against one victim. Randall's repeated and continuous

exploitation of both teenage and adult victims multiplied the harm he inflicted. The increased harm he caused should, therefore, result in an increased sentence.

7. **Broad Geographic Scope of the Venture**

Another factor that suggests the appropriateness of a strong sentence is the broad geographic scope of the Horse Block Pimpin venture. It was a well-managed, financially-lucrative, interstate enterprise that sought to maximize profits while evading detection by the police. Indeed, it succeeded in avoiding attention from law enforcement for many years. It operated in numerous cities and states, including New York City and Long Island, New York; Fayetteville (and the surrounding areas), North Carolina; Houston (and the surrounding areas), Texas; New Orleans and Baton Rouge, Louisiana; Maryland (including Baltimore and Rockville); Pittsburgh, Pennsylvania; Atlantic City, New Jersey; and the Commonwealth of Virginia (including Charlottesville, Alexandria, Richmond, Virginia Beach, Glen Allen, Fredericksburg, Fairfax County, Arlington, Chantilly, Springfield, Herndon, Dulles, Manassas, and Stafford County). The breadth and the scope of the venture further suggests that a strong sentence is necessary in this case.

8. **Sexual Gratification with an Underage Girl**

Randall also used TH for his own sexual gratification with full knowledge that she was only 17 years old. Indeed, Randall had a rule (consistent with the practice of many other sex traffickers) that he was entitled to have sexual relations with any woman or girl he prostituted. SOF ¶ 7. Thus, in addition to exploiting TH for pecuniary gain, Randall exploited TH for himself. This uninhibited willingness to sexually exploit a juvenile is yet another factor that calls for strong punishment and is not reflected in Randall's offense level.

### 9. Production of Child Pornography

In addition to having sex with TH, Randall also took photographs of her while she was naked, despite knowing that she was only 17 years old. Statement of Facts, ¶ 29. Production of child pornography is itself a serious crime that warrants enhanced punishment. As the Supreme Court has recognized, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *New York v. Ferber*, 458 U.S. 747, 758 (1982); *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come."). This production of child pornography also is not reflected in Randall's offense level. It is yet another aggravating factor that calls for a sentence of 500 months of imprisonment.

### 10. Obstruction of Justice

Randall's obstruction of justice further suggests that a sentence of 500 months of imprisonment is the appropriate sentence. As the PSR succinctly stated:

> The defendant obstructed justice in this case by making threats by telephone to one of the minor victims. Specifically, in November 2014, after Robert Bonner was arrested, the defendant contacted minor victim T.H. and said that "a bunch of bitches" were talking and putting his criminal associates in jail. He further said that if anyone questioned T.H. she should tell them that she did not know him very long and did not prostitute for him. Finally, he said that another woman had talked to law enforcement and that he "better not catch up with that bitch." T.H. told agents she considered this to be a threat to her directly that she should not make the same mistake the other woman did.

PSR, ¶ 17. Threatening witnesses and attempting to coerce them not to cooperate with federal agents is standard practice for many sex traffickers. Fortunately TH (and another witness whom Randall attempted to intimidate) had the courage to overcome the fear that Randall engendered through his threats. These threats, however, initially had their intended effect and caused the

victim-witnesses to be reticent when approached by law enforcement officials. Thus, Randall warrants additional punishment for this additional facet of his criminality.

B. **History and Characteristics of the Defendant**

Randall has generally lived a life of crime, including sex trafficking and the sale of narcotics. He has been arrested over 18 times. *See* PSR, ¶¶ 34-56. Thus, it is not surprising that he finds himself in Criminal History Category VI, the highest Criminal History Category in the Guidelines. His decision to pursue pimping as his vocation demonstrates that society needs protection from Randall,[5] and that the only sure means of protecting society is a substantial term of incarceration.

Randall's commitment to a life of crime demonstrates his lack of rehabilitative potential. Previous terms of incarceration did not reform Randall or even cause him to stop and reflect on where his life was heading. The best course of action would be to isolate Randall from society for a substantial term. Society and the courts have an interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Rummel v. Estelle*, 445 U.S. 263, 276, 100 S. Ct. 1133, 1140 (1980). Thus, Randall's history and characteristics strongly suggest that this Court should sentence him to 500 months of imprisonment.[6]

---

[5] Criminals who derive their livelihood primarily from crime warrant increased punishment. *United States v. Guarin*, 898 F.2d 1120, 1122 (6th Cir. 1990) (the fact that the defendant's criminal livelihood was largely or completely based on crime warranted an increased sentence); *United States v. Rodriguez*, 882 F.2d 1059, 1068 (6th Cir. 1989) (criminal livelihood is an adequate justification for an increased sentence).

[6] Randall pleaded guilty and thereby saved the United States the time and expense of establishing his guilt at a trial. Randall, therefore, deserves some consideration for this. The United States has factored this into its recommendation. Had Randall not pleaded guilty, the United States would have asked for a far greater sentence.

### C. Need of the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment

Imposing a sentence of 500 months of imprisonment would also reflect the seriousness of Randall's offenses, would promote respect for the law, and would provide just punishment for the offenses committed by him. As demonstrated above, Randall's conduct was egregious and his crimes were serious ones. In light of the substantial harm caused by Randall and the Horse Block Pimpin prostitution venture, only a substantial sentence could fully reflect the seriousness of his offenses. A substantial sentence will go a long way toward promoting respect for laws that Congress enacted to protect victims of sex trafficking.

### D. The Need of the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from Further Crimes of the Defendant

There is a great need for Randall's sentence to deter others who are prostituting teenagers, prostituting adults by means of force and coercion, or who are contemplating these crimes. *United States v. Flores-Machicote*, 706 F.3d 16, 22 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus."); *United States v. Miller*, 484 F.3d 964, 967-68 (8th Cir. 2007) ("general deterrence . . . is one of the key purposes of sentencing . . . ."); *United States v. Jackson*, 835 F.2d 1195, 1199 (7th Cir. 1987) (Posner, J., concurring) ("deterrence is the surest ground for punishment . . . since incapacitation may, by removing one offender from the pool of offenders, simply make a career in crime more attractive to someone else, who is balanced on the razor's edge between criminal and legitimate activity and who now faces reduced competition in the crime 'market.'"). Unfortunately, as Randall has shown, the prostitution of minors and the coerced prostitution of adults can be financially enriching.

In addition, "pimping" is now frequently glorified in certain subcultures through music and other media. The culture of pimping has become so established that it has its own rules and "code

of conduct." *Pipkins*, 378 F.3d at 1285. There are books, videos, and songs that celebrate pimping, portray pimps as heroes, and provide "how to" advice to nascent pimps. Randall is one of many who see nothing wrong with prostituting teenage girls. There is a great need to deter young men who are contemplating becoming pimps. There is a great need to send a message to would-be pimps that treating human beings as property is immoral, unlawful, and will be severely punished.

Furthermore, due to the immaturity of victims and their vulnerability to threats and coercion, it is often difficult to detect and punish sex trafficking crimes. Pimps are sometimes the first men who have shown any interest in their teenage victims, and the victims often mistake that attention for love. Some victims, therefore, remain staunchly loyal to their pimps, despite the beatings they repeatedly endure. Instead, they sometimes mistakenly perceive the beatings as a normal expression of a pimp's "love" for his "bitches." In addition, because many victims are runaways, they have an aversion to contacting or cooperating with the police. Thus, criminals preying upon such victims enjoy a high probability of success with little chance of detection. Only strong punishments for those pimps who are caught and prosecuted will deter others from participating in such schemes.

Because the financial rewards of such crimes can be great, and the risk of being discovered and punished are easily minimized, in order to deter such crimes the sentences of those who are successfully prosecuted must be substantial. *See United States v. Hauptman*, 111 F.3d 48, 52 (7th Cir. 1997) (strong sentences are necessary to deter crimes that are potentially lucrative). Only a strong sentence will negate the incentive to commit such crimes and the danger that similar crimes will go undiscovered and unpunished. *See United States v. Newmann*, 965 F.2d 206, 210 (7th Cir.

1992) (deterrence requires stronger sentences when a crime is less likely to be detected because potential punishment is discounted by the improbability of its being imposed).

Randall's recidivism also suggests the need for a term of incarceration within the range suggested by the Guidelines. *Ewing v. California*, 538 U.S. 11, 25, 123 S. Ct. 1179, 1188 (2003) ("Recidivism has long been recognized as a legitimate basis for increased punishment."). Indeed, as the Supreme Court has recognized, the risk of recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Almendarez-Torres v. United States*, 523 U.S. 224, 243, 118 S. Ct. 1219, 1230 (1998). Because Randall repeatedly chose sex trafficking as his career―despite previous encounters with law enforcement and opportunities to mend his ways―a significant term of imprisonment is necessary to incapacitate the defendant and protect society from him.[7] The defendant's previous brushes with the law were not sufficient to deter the defendant from pursuing a life of crime, which further demonstrates the need for significant punishment in this case. A sentence of 500 months of imprisonment would ensure that the public is protected from Randall during his term of incarceration.

### E. The Kinds of Sentence Available

The kinds of sentences available to this Court also demonstrate the need for a 500-month sentence. There is no other sentence that would adequately address the other section 3553(a) factors.

---

[7] In March 2011, Randall was arrested and charged with Prostitution and Operating a Prostitution Business in Montgomery County, Maryland. PSR, ¶ 45. This should have been a wakeup call to Randall. The arrest and conviction should have caused him to renounce his life of sex trafficking. Instead, he elected to continue exploiting women for profit.

### F. The Need to Avoid Unwarranted Sentencing Disparities

This Court also must fashion a sentence that avoids unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6). In this case, the best way to avoid unwarranted sentencing disparities is to sentence Randall to 500 months of imprisonment. Although such a sentence might be disparately lenient, it is not disparately severe.

## III. Conclusion

The United States agrees with the PSR that the Sentencing Guidelines recommend a sentence of 360 months of incarceration to imprisonment for life. The United States asks for a sentence of **500 months of imprisonment** followed by 20 years of supervised release. The United States also asks that this Court order the defendant <u>not to contact any of the victims</u> noted in the Statement of Facts and PSR, both while he is imprisoned and while he is on supervised release. Finally, the United States also asks that this Court impose the mandatory condition that the defendant register as a sex offender, pursuant to 18 U.S.C. § 3583(d).

        Respectfully Submitted,

        Dana J. Boente
        United States Attorney

By:         /s/
        Michael J. Frank
        Assistant United States Attorney
        Kathryn A. Kimball
        Special Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, VA 22314
        703-299-3920

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on **October 18, 2015**, I will electronically file the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send an electronic copy to: **Christie Leary**, counsel for the defendant.

                        By:         /s/
                                 Michael J. Frank
                                 Assistant United States Attorney